453 F.2d 497
 Michael DAVIS, a minor by his next friend, Jean Ross,
Individually and on behalf of all others similarly
situated, Appellant,
v.
George P. SHULTZ, Secretary of the United States Department
of Labor, et al.
 No. 19330.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 8, 1971.
Decided Dec. 27, 1971.
 
 William R. Blane, Cape-Atlantic Legal Services, Atlantic City, N. J. (Joseph T. Wilkins, Director, Cape-Atlantic Legal Services, Atlantic City, N. J., on the brief), for plaintiff-appellant.
 D. William Subin, Asst. U. S. Atty., Camden, N. J. (Herbert J. Stern, U. S. Atty., Newark, N. J., on the brief), for appellee George P. Shultz.
 Brown, Connery, Kulp, Wille, Purnell & Green, Camden, N. J., on the brief for appellees Atlantic Human Resources, Inc., and Thomas C. Brown by William J. Cook, Camden, N. J.
 Before VAN DUSEN and ROSEN, Circuit Judges, and LAYTON, District Judge.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 This is an appeal from a district court order of July 9, 1970, dismissing the complaint "with prejudice" after making a finding of lack of subject matter jurisdiction. The dispute arose out of the dismissal of Michael Davis, the named plaintiff, and 178 other economically disadvantaged youths from a Neighborhood Youth Corps Program[1] in the summer of 1969. The program, which provided summer employment and training for disadvantaged youths pursuant to the Economic Opportunity Act of 1964, 42 U.S.C. Sec. 2737, et seq., was administered by defendant, Atlantic Human Resources, Inc. (Atlantic). Atlantic is a local non-profit Community Action Agency[2] which administered the program under a contract from the United States Department of Labor.[3] Plaintiff filed a class action in two counts, on behalf of himself and all those similarly situated, seeking money damages, mandamus, injunctive relief, and a declaratory judgment. Count I of the complaint seeks relief for the alleged improper administration of the program based on the failure to implement the incidents of prime sponsorship, while Count II alleges injury resulting from the denial of the opportunity to participate in the work training program by virtue of the above-mentioned dismissal of the youths.
 
 
 2
 The basis of the claim in Count I is that Atlantic should have been named as a prime sponsor and, as such, should have implemented the incidents of prime sponsorship. 42 U.S.C. Sec. 2739(a) provides that the director of OEO ". . . shall recognize a public or private nonprofit agency which shall serve as the prime sponsor to receive funds . . ." and administer community programs under Title I-B.[4] The director of OEO has delegated his duties under the above section to the Department of Labor.[5] Paragraph 5 of the delegation agreement, which is binding on both the Secretary of Labor and the OEO director, provides that "in communities served by community action agencies, the community action agency shall be the prime sponsor. . . ."[6] Plaintiffs argue that Atlantic, as a Community Action Agency, becomes a prime sponsor by operation of law and that the Secretary of Labor had no discretion permitting it to operate a Title I-B program without a prime sponsor and is obliged to see that the duties of the prime sponsor are carried out.[7] Plaintiff's argument is rebutted by the language of the statute which grants discretion to the director in naming prime sponsors. The program here involved is a "comprehensive work and training program" pursuant to 42 U.S.C. Sec. 2740. That section includes a clause which permits the funding of such programs to be through "a public agency or private organization other than a prime sponsor." 42 U.S.C. Sec. 2740(c). The section goes on to provide that such funding is to occur only after considering the comments of the prime sponsor "if any." It is thus clear that the director[8] has broad discretion and can elect not to appoint a prime sponsor.[9] Also a Community Action Agency does not automatically become a prime sponsor by operation of law. In the Conference Committee Report on Title I-B, a Senate provision which would have required that Community Action Agencies be appointed as prime sponsors absent compelling circumstances was deleted.[10] Plaintiffs also cite paragraph 5 of the delegation agreement for the proposition that a Community Action Agency becomes a prime sponsor by operation of law. This interpretation of paragraph 5 is controverted by the second sentence of that paragraph, which grants exceptions to the policy for compelling program reasons.[11] The restrictive reading of this exception which plaintiffs' position necessitates is not consistent with the legislative history of the statute outlined above. The delegation agreement must be interpreted consistently with the statute which authorizes it. For the foregoing reasons, we conclude that Atlantic was not a de jure prime sponsor, there was no statutory duty to name Atlantic as a prime sponsor, and it was not a de facto prime sponsor. There is correspondingly no merit to plaintiff's claim that he has been injured by the failure to implement the incidents of prime sponsorship.
 
 
 3
 Count II of the complaint deals with the dismissals from the program in mid-summer and claims that they were the result of mismanagement and incompetency. Also, it alleges that defendants have interfered with the named plaintiff's attempts to redress the wrongful dismissals. Count II is brought as a class action, and damages are claimed for the loss of the benefits of the work training program by Davis and the 178 other youths who were dismissed. The record demonstrates that the named plaintiff has suffered no deprivation of rights and he should not be permitted to bring a suit on behalf of a class of persons who may have suffered interference with their personal rights.[12] On August 6, 1969, budget limitations forced the reduction of the number of enrollees in the work training program. In order to minimize the effect of this reduction, some of the employers with whom enrollees had been working under the program agreed to continue the employment and to pay wages directly. Plaintiff Michael Davis was reemployed by the Atlantic City Board of Education soon after his displacement from the program.[13] He cannot now claim that the denial of the benefits of the work training program for this brief period of time amounted to a deprivation of his rights.
 
 
 4
 For the above-stated reasons, we find that neither of the counts of the complaint states a claim on which relief can be granted, so that the jurisdiction of the district court may be assumed. However, we also note that the district court was apparently correct in its finding that the complaint had no jurisdictional basis. Plaintiff claimed that jurisdiction was based on 28 U.S.C. Sec. 1361 and 28 U.S.C. Sec. 1331.[14]
 
 
 5
 Plaintiff has failed to meet the $10,000. jurisdictional minimum of Sec. 1331. A party asserting Sec. 1331 jurisdiction has the burden of establishing by competent and preponderate evidence that his claims exceed $10,000.[15] Normally an allegation of $10,000. damages made in good faith is sufficient, but if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction.[16] Plaintiff has the burden of proving that the legal impossibility of recovering $10,000. is not so certain as to negative his good faith in asserting the claim. In the instant case, plaintiffs have failed to meet that burden. As was set out above, the named plaintiff was deprived of employment for a brief period of two weeks or less. His actual damages are clearly far less than the jurisdictional minimum.[17] Named plaintiff, in addition, claims indirect damages for the effect that the short displacement will have on his future development. We feel that while such a claim might have some merit if raised in a different context, it has none when based on such a brief deprivation of the benefits of the Act. In any event, even if plaintiff suffered compensable harm, his damages are speculative[18] and incapable of monetary valuation, and thus cannot serve as a basis for Sec. 1331 jurisdiction.[19]
 
 
 6
 Plaintiff's claim of jurisdiction based upon 28 U.S.C. Sec. 1361 to consider the claim for mandamus relief was properly dismissed by the district court. Section 1361 grants original jurisdiction to district courts to consider "actions in the nature of mandamus" directed against officers and employees of the Federal Government.[20] The question of the proper scope of an "action in the nature of mandamus" under Sec. 1361 has been the subject of varying interpretations. The majority of the Circuit Courts of Appeals which have considered this question have adopted the position of former Chief Judge Hastie of this Circuit, speaking for the First Circuit, in Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965).[21] This position is that Sec. 1361 and its accompanying venue amendments were designed to eliminate obstacles to bringing mandamus actions outside of the District of Columbia and were not meant to alter the traditionally limited nature of the writ. Under this view, mandamus will lie only to compel the performance of a plain duty and will not lie to compel the discharge of an action committed to discretion.[22] In the instant action, plaintiff seeks to compel Secretary Shultz to perform an act which has been committed to his discretion, i.e., the naming of a prime sponsor. Under the majority view, mandamus will not lie.
 
 
 7
 The majority view is that in certain limited cases a Sec. 1361 action may be used to compel the performance of an act committed to discretion. As the District of Columbia Circuit stated in Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561 (1970), jurisdiction can be based on Sec. 1361 to ". . . issue appropriate corrective orders where Federal officials are not acting within the zone of their permissible discretion but are abusing their discretion or otherwise acting contrary to law. . . ." In the instant action, plaintiff has claimed no such variance from the permissible scope of discretion granted to Secretary Shultz but rather has relied on the theory that the Secretary has disregarded a mandatory duty to appoint a prime sponsor.[23] Since we have concluded that no such mandatory duty exists, Sec. 1361 relief will not lie under this view.
 
 
 8
 For the foregoing reasons, we affirm the July 9, 1970, order of the district court.
 
 
 
 [1]
 The Neighborhood Youth Corps is the popular name given to work experience programs under Title I-B of the Economic Opportunity Act, 42 U.S.C. Sec. 2738
 
 
 [2]
 Atlantic was named the Community Action Agency for Atlantic and Cape May Counties, New Jersey, pursuant to 42 U.S.C. Sec. 2790
 
 
 [3]
 The Director of the Office of Economic Opportunity delegated his duty to let such contracts under 42 U.S.C. Sec. 2739 to the Department of Labor. 42 U.S.C. Sec. 2942(d) provides for such delegations of authority. See Delegation of Authorities, O.E.O., Dept. of Labor, 33 Fed.Reg. 15139 (1968)
 
 
 [4]
 The Neighborhood Youth Corps is such a Title I-B program
 
 
 [5]
 See note 3, supra
 
 
 [6]
 Delegation of Authorities, O.E.O., Dept. of Labor, 33 Fed.Reg. 15139 (1968)
 
 
 [7]
 Manpower Administration Order No. 12-68 (Oct. 9, 1968), issued by the Department of Labor, sets out the duties and responsibilities of a prime sponsor. 42 U.S.C. Sec. 2739(d) mandates certain incidents of prime sponsorship, including citizen involvement in the conduct of programs. The lack of participant involvement is plaintiffs' chief complaint
 
 
 [8]
 Or, in this case, his delegate, the Secretary of Labor
 
 
 [9]
 The existence of discretion not to appoint a prime sponsor is also evident from the legislative history of Title I-B. In the Senate Report, it was stated that "The authority to fund components directly rather than through prime sponsors will also be used. . . ." Senate Comm. on Labor and Public Welfare, No. 563, S. 2388, p. 2444, 1967, U.S. Code Cong. and Admin. News (90th Cong., 1st Sess.)
 
 
 [10]
 "Sec. 122-Prime sponsors and delegated agencies. The Senate bill requires that for each community program area, the prime sponsor to receive funds under this part shall be the community action agency unless the Director determines that an alternative prime sponsor is likely to have a greater capability in planning and implementing a comprehensive work and training program. The House amendment does not contain this provision. The Senate recedes." Conference Report, No. 1012, S. 2388, pp. 2575-76, 1967 U.S. Code Cong. and Admin. News (90th Cong., 1st Sess.)
 
 
 [11]
 "5. In communities served by community action agencies the community action agency shall be the prime sponsor for all work training projects. Exceptions to this policy may be made for compelling program reasons after consultation between the staffs of the Office of Economic Opportunity and the Department of Labor." Delegation of Authorities, 33 Fed.Reg. 15139 (1968)
 
 
 [12]
 A prerequisite of a properly maintainable class action under Fed.R.Civ.P. 23 is that the plaintiff representative be a member of the class which he purportedly represents. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). Plaintiffs did file a motion for determination that the action is maintainable as a class action, but the district court did not rule on it, holding that its dismissal of the cause of action rendered the issue moot
 
 
 [13]
 The record is unclear as to the exact amount of time he was unemployed but, in any event, it was not longer than two weeks
 
 
 [14]
 Plaintiffs claim jurisdiction based on the Administrative Procedure Act, which provides that "a person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. Sec. 702, which was cited in a one-sentence footnote in their district court brief and was not mentioned during the district court argument, giving that court reason to believe it had been abandoned. This ground cannot be raised for the first time on appeal. Although this court has allowed such amendments under 28 U.S.C. Sec. 1653 to perfect an improperly pleaded jurisdictional basis, see, e. g., Guerrino v. Ohio Casualty Ins. Co., 423 F.2d 419 (3d Cir. 1970) (diversity alleged but not properly pleaded), it is necessary that the grounds be raised in the district court. See Ehrlich v. Van Epps, 428 F.2d 363 (7th Cir. 1970); Sachanko v. Gill, 388 F.2d 859, 861 (3d Cir. 1968); Tromza v. Tecumseh Products Co., 378 F.2d 601, 604 n. 4 (3d Cir. 1967). Furthermore, we note that 5 U.S.C. Sec. 701(a) excludes from the review provisions of the Act situations where "agency action is committed to agency discretion by law." Plaintiffs' contention that North City Area-Wide Council, Inc. v. Romney, 428 F.2d 754 (3d Cir. 1970), is applicable to the facts of this case is rejected
 
 
 [15]
 McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Breault v. Feigenholtz, 380 F.2d 90, 92 (7th Cir. 1967), cert. denied, 389 U.S. 1014, 88 S.Ct. 591, 19 L.Ed.2d 660 (1967). Plaintiffs assume this burden since the question of jurisdictional amount was placed in issue by defendants' motion to dismiss
 
 
 [16]
 See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Nelson v. Keefer, 451 F.2d 289 (3d Cir., 1971); Jaconski v. Avisun Corp., 359 F.2d 931, 934 (3d Cir. 1966); Riggins v. Riggins, 415 F.2d 1259 (9th Cir. 1969)
 
 
 [17]
 We have decided that the named plaintiff may not properly bring this suit as a class action, but even if he could, plaintiff would not be permitted to aggregate his damages with those of other members of the purported class. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)
 
 
 [18]
 Rosado v. Wyman, 414 F.2d 170 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970)
 
 
 [19]
 Goldsmith v. Sutherland, 426 F.2d 1395, 1398 (6th Cir. 1970); Wade v. Rogala, 270 F.2d 280 (3d Cir. 1959)
 
 
 [20]
 Section 1361 was part of a 1962 amendment to Title 28 which enlarged the jurisdiction of the district courts and liberalized the venue requirements. Prior to these amendments, it was impossible to bring a mandamus action against a federal official in any district other than the District of Columbia. See generally Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308 (1967)
 
 
 [21]
 Jarrett v. Resor, 426 F.2d 213 (9th Cir. 1970); Carter v. Seamens, 411 F.2d 767 (5th Cir. 1969); Rural Electrification Admin. v. Northern States Power Co., 373 F.2d 686 (8th Cir. 1967); Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364 (10th Cir. 1966)
 
 
 [22]
 Ashe v. McNamara, 355 F.2d 277, 282 (1st Cir. 1965)
 
 
 [23]
 Paragraph 12 of the complaint alleges:
 "Plaintiff is informed and believes that defendant George P. Shultz through his agents, employees, and subordinates has refused to implement 42 U.S.C. 2737 et seq. and Manpower Administration Order 12-68 in deliberate disregard of the mandates contained therein, setting up as his reason for doing so a denial that the effect of the aforesaid authorities is to constitute said Atlantic Human Resources or any other community action agency prime sponsor of Title I-B programs."