**LOWER EAST SIDE NEIGHBORHOOD HEALTH COUNCIL–SOUTH, INC.,** et al., Plaintiffs,

v.

**Elliot L. RICHARDSON, as Secretary of the U.S. Department of Health, Education and Welfare, et al., Defendants.**

No. 71 Civ. 5160.

United States District Court,
S. D. New York.

May 23, 1972.

MFY Legal Services, Inc., Michael P. Opton, Louise Lander and Carolyn M. Heft, New York City, of counsel, for plaintiffs; David Rudenstine, New York City, Community Action for Legal Services, Inc., of counsel.

Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., for defendants Richardson and Wilson; Gerald A. Rosenberg, Asst. U. S. Atty., of counsel.

Lester Berkelhamer, New York City, for defendants Trussel and Ferrer.

J. Lee Rankin, Corp. Counsel, New York City, for defendant English; Milton Weinberg, David W. Fisher, New York City, of counsel.

LASKER, District Judge.

Plaintiffs move for a preliminary mandatory injunction requiring the New York City Health and Hospitals Corporation ("HHC") to continue the Lower East Side Neighborhood Health Council-South, Inc. ("Health Council") as the local agency to provide community participation in the operation of a federally funded comprehensive health program.

Congress authorized the creation of comprehensive health services programs and mandated that such programs include community participation by the Economic Opportunity Act of 1964.[1] The administrative agencies charged with implementing Congress' program have determined that community participation must be provided in one of two ways,[2] including, as here, by means of a neighborhood health council.[3] The Health Council has served as the community participation agency for a comprehensive health services program known as the Gouverneur Health Services Program ("GHSP"). Federal grants financing GHSP included budget allocations for the Health Council in 1970–1971 and 1971–1972.

In 1971, the agencies involved in financing and sponsoring GHSP changed. Authority for awarding grants had been transferred late in 1970 from the Office of Economic Opportunity ("OEO") to the Department of Health, Education and Welfare ("HEW"). In the same year Beth Israel Medical Center, which had been the sponsor for GHSP, agreed to transfer sponsorship of the application for GHSP funding for the year 1972–1973 to the then newly organized HHC. HHC decided to operate the program at a changed location, the new Gouverneur Hospital.

HHC's application for the 1972–1973 grant to GHSP was made without the participation of the Health Council. Late in 1971, the Health Council claimed the right to a role in preparing the new GHSP application. After some delay, HHC made attempts to meet with representatives of the Health Council, but the efforts did not reach fruition. While the record is insufficient to assess whether HHC or the Health Council was more at fault in the breakdown of the eleventh hour effort to arrange Health Council participation, it does reveal HHC's exclusion of Health Council from the preparation of the GHSP grant application.[4]

HHC's application provided for a "Community Board" as required by Chapter 1016 of the Laws of New York of 1969, § 7384(11) of McKinney's Unconsolidated Laws,[5] but no reference was made to the federal requirements of OEO–HEW Memorandum of Understanding mandating the involvement of a neighborhood health council. The state statute provides in relevant part:

1. 42 U.S.C. § 2701 et seq. For comprehensive health services programs see 42 U.S.C. § 2809(a) (4) (A).

2. These two methods are set forth first in "The Comprehensive Neighborhood Health Services Programs Guidelines" issued by Health Services in the Office of Economic Opportunity.

3. The first method, by providing that one-third of the governing board of the agency administering the grant is made up of community members who use the health services, is not in issue here.

4. See affidavit of Paul Ramos, sworn to May 2, 1972, and affidavit of Michael Op-

ton, sworn to May 3, 1972, indicating that HHC did not involve Health Council in preparation of the 1972–1973 grant application for GHSP. See affidavit of Gustavo DeVelasco, sworn to May 16, 1972, and affidavit of Paul J. Kerz, sworn to May 16, 1972, and especially Exhibit E thereto, being a letter to HEW from HHC with a schedule of unsuccessful efforts to permit Health Council to participate in the final preparation of the 1972–1973 GHSP grant application.

5. Exhibit B to Kerz affidavit, supra, note 4.

"The corporation shall establish a community advisory board for each of its hospitals to consider and advise the corporation and the hospital upon matters concerning the development of any plans or programs of the corporation, and may establish rules and regulations with respect to such boards. The members of such advisory boards shall be representatives of the community served by the hospital."

■ HHC argues that it is required by New York law to create such a community board and that the discharge of its state obligation satisfies the federal requirements. We make no determination as to whether fulfillment of the state law requirements is the equivalent of discharging the federal obligation. Certainly the breadth of language of the state statute is such that it appears that HHC could create a "community advisory board" which would accord with federal specifications. We hold only that if there is any conflict between state and federal law, federal law, under which the grant was made, controls.[6] The Health Council appears to satisfy the requirements of both the state and federal laws, although, as indicated below, we do not hold that HHC is obligated to utilize the Health Council indefinitely as the community participating agency.

Pressed by HEW for compliance with the federal requirement of a neighborhood health council, HHC wrote HEW on April 10, 1972, agreeing to implement the federal requirements in the process of creating its own community board.[7] On April 17, 1972, HEW awarded the GHSP grant to HHC. To date no community board or other mechanism of community participation has been established, and the GHSP grant contains no provision for a neighborhood health council.

Health Council contends that it has been unilaterally dropped from the GHSP and that the program now functions without the required community participation in violation of federal law and rules.

■■ While we question whether the Health Council has a vested interest in remaining indefinitely as *the* neighborhood health council, we do find that the law requires either a properly structured board of directors or a neighborhood council to participate in planning and other aspects of the project. Neither is provided for in the grant to HHC. The Health Council has functioned as the necessary community participation agency in the past, and until HHC has created and is ready to immediately implement an alternative community participation agency which HEW, the agency responsible for such a determination, deems to comply with federal standards, continued participation of the existing neighborhood council appears proper and justified.

The classic criteria for determination as to whether a preliminary injunction should be granted are: (1) irreparability of harm to the plaintiff *pendente lite;* (2) balance of hardships between the parties; (3) probability of plaintiff's success on the merits; and (4) the public interest where, as here, it is involved. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir. 1953); Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966).

The record establishes present irreparable harm to the Health Council and reveals that the balance of hardships weighs heavily against plaintiffs. Health Council has lost its budget financing and is excluded from performing the functions for which it was created. On the other hand, the GHSP grant is in the amount of $1,559,868, and a budget allocation at the rate of $40,000 per annum (about $750 per week) to the Health Council is not large enough to impair the operation of GHSP or impose a hardship on it; and, aside from mone-

6. Federal law also controls because of the supremacy clause of the Constitution, Article VI, clause 2.

7. Exhibit D to Kerz affidavit, supra, note 4.

tary considerations, defendants have not shown or contended that they will be "damaged" by the participation of the Health Council until another properly qualified council is ready to go.[8]

Plaintiffs have also demonstrated a probability of success on the merits, as evidenced by the federal statutes and rules set out in the preceding annotations. OEO–HEW has specified that such projects as GHSP must bring about community involvement either through a properly structured board of directors or *a* neighborhood health council. Neither exists as things stand. HHC's assurances that it will comply with these regulations in the future are insufficient to remedy the present deficiency. Furthermore, it is probable that plaintiff Health Council will prevail in its contentions that HEW in making the grant, and HHC in preparing the grant application, have violated HEW's rule providing that "[t]he Neighborhood Health Council shall participate in such activities as the development and review of applications for OEO assistance."[9] See North City Area-Wide Council, Inc. v. Romney, 428 F.2d 754 (3d Cir. 1970).

We do not quarrel with defendants' argument that the determination of whether to grant HHC's application is committed to agency discretion. The issue before us on this motion is not whether the grant is valid, and we make no finding on the question. For this reason defendants' reference to such cases as Kletschka v. Driver, 411 F.2d 436, 443–446 (2d Cir. 1969), is inapposite.

Finally, even if there are doubts as to whether the plaintiffs will succeed on the merits, at the least they have raised serious, substantial and difficult questions which call for more studied analysis.

"To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (*i. e.,* the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Hamilton Watch Co. v. Benrus Watch Co., supra, 206 F.2d at 740.

Accord: Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir. 1969).

The public interest in the matter at hand is significant. The need for effective continuation of congressionally mandated health services without interruption is clear. The Economic Opportunity Act stresses the requirement for community participation in the planning and operation of such health services. 42 U.S.C. § 2701, § 2809(a) (4) (A) (ii). These dual objectives can best be obtained by continuing the GHSP operation under its new sponsorship, provided that community participation be continuous also. In this case that means that the Health Council should serve as the participating group in accordance with federal law and rules either until it is reappointed by HHC or a qualified substitute organization created by HHC is ready to step in.

Accordingly, defendants are enjoined to continue the Health Council as the neighborhood health council for GHSP until such time as other arrangements complying with applicable federal rules may be ready for immediate implementation to assure community participation in GHSP. During that period HHC shall continue to fund the Health Council at the 1971–1972 level for the Council, and in all other respects accord it the status afforded by the OEO–HEW Memoran-

---

8. These showings alone have in appropriate circumstances been sufficient basis for granting a preliminary injunction. See Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972 (1929).

9. V(d) (2) of OEO–HEW Memorandum of Understanding, supra, note 2.

dum of Understanding (supra, note 2) and under the applicable provisions of 45 C.F.R., in particular § 1071.1–1 through § 1071.1–4.[10]

We find no merit in HEW's contention that the Health Council lacks standing to press the claims which it raises here. As the previously officially recognized agency for providing mandated community participation in GHSP, the Health Council's interest "sought to be protected" is at least "arguably within the zone of interests to be protected. . . ." (Association of Data Processing Service v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)), and Health Council and the individual plaintiffs "have the personal stake and interest that impart the concrete adverseness required by Article III" (Barlow v. Collins, 397 U.S. 159, 164, 90 S.Ct. 832, 836, 25 L.Ed.2d 192 (1970)).

We do agree with defendants that a distinction may exist between the legal interest of plaintiff Health Council in maintaining its position and that of health care consumers of the project's services. To the extent that these differences are real and consumers wish to press their own interests, the rule of Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), may apply. However, defendants have not specified what claims here are "consumers'" as opposed to Health Council's, and no consumer has asserted any such claim. Our disposition of the case requiring the defendants to continue Health Council as the participating agency until a substitute body is available in no way affects and is not intended to affect the interest which any consumer or class of consumers may independently assert by intervention or otherwise.

The foregoing constitutes the court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

Plaintiffs' motion for leave to file a second amended and supplemental complaint is granted on consent. The motion for a preliminary injunction is granted to the extent indicated in this memorandum.

Submit order on two days' notice.

---

10. Plaintiff Health Council also asks to have the temporary injunctive relief include a continuation of its one-year agreement with Beth Israel Medical Center for the Delegation of Activities (dated October 6, 1971). There is no indication that this agreement was to continue beyond 1971, and while the parties may wish to abide by it under HHC as under Beth Israel, plaintiff has not established that it should be included in the scope of the preliminary injunction granted here.