**HOFFMANN–LA ROCHE, INC.,**
Petitioner,

v.

**Richard G. KLEINDIENST, Attorney General of the United States**

and

**John E. Ingersoll, Director, Bureau of Narcotics and Dangerous Drugs, United States Department of Justice, Respondents.**

No. 71–1299.

United States Court of Appeals,
Third Circuit.

Submitted April 26, 1972 Under Third
Circuit Rule 12(6).

Decided June 26, 1972.

Thomas D. Finney, Jr., Clifford, Warnke, Glass, McIlwain & Finney, Washington, D. C., Ralph N. Del Deo, Crummy, O'Neill, Del Deo & Dolan, Newark, N. J., for petitioner.

Allan P. Mackinnon, Dept. of Justice —Criminal Division, Washington, D. C., for respondents.

Before BIGGS and ROSENN, Circuit Judges, and KRAFT, District Judge.

OPINION ON STATEMENT OF RE-SPONDENTS IN ANSWER TO RULE TO SHOW CAUSE AND THE REPLY OF PETITIONER HOFFMANN–LA ROCHE, INC., THERETO

PER CURIAM:

To the end that the record might clearly demonstrate the operative facts in this case, the court issued an order to show cause on March 17, 1972 as follows: "It appearing that the original order of the Acting Commissioner, 31 Fed.Reg. 565, that Librium and Valium be listed as depressant drugs having a potential for abuse, stated that the proposal [for listing Librium and Valium as depressant drugs having a potential for abuse] was made 'on the basis of his investigations and the recommendations of an advisory committee appointed pursuant to Section 511(g) (1)' of the Federal Food, Drug and Cosmetic Act, and that at a prehearing conference counsel for the petitioner formally moved for the production of the report, recommendations and underlying data, and reasons certified to the Secretary by the advisory committee as to why Librium and Valium should be so listed, and Section 706(d) (2) of the Act provides 'any report, recommendations, underlying data, and reasons certified to the Secretary by an advisory committee . . . shall be made a part of the record of any hearing if relevant and material, subject to the provisions of section 7(c) of the Administrative Procedure Act,' and that the request of the petitioner was refused, it is

"ORDERED that the Honorable Richard G. Kleindienst, Acting Attorney General *vice* the former respondent, former Attorney General, the Honorable John N. Mitchell, and the Honorable John E. Ingersoll, Director of the Bureau of Narcotics and Dangerous Drugs, United States Department of Justice, shall, on or before April 10, 1972, show cause, if any there be, why '. . . [the] report, recommendations, underlying data and reasons certified to the

Secretary by the advisory committee,' referred to in the first paragraph of this order to show cause, should not be made available to the petitioner for examination by it; and it is

"FURTHER ORDERED that the respondents may reply to this order by filing a typewritten answer or brief, or both, on or before April 10, 1972; and it is

"FURTHER ORDERED that the petitioner may reply or file a brief, or both, typewritten, to the respondents' answer and brief on or before April 26, 1972."

The respondents filed a statement in answer to this rule on April 10, 1972 and Hoffmann-La Roche, Inc. ("Hoffmann") on April 26, 1972 filed a reply to the statement of the respondents in answer to the order to show cause. Respondents adhered to the position that the report of the Advisory Committee, its recommendations and underlying data and reasons certified to the Secretary should not be discovered and Hoffmann has taken the contrary position. This opinion is directed toward the issues thus presented.

Sections 511(g) (1) and 706(d) (2) of the Federal Food, Drug, and Cosmetic Act are cited on page 1 of the Statement of Respondents in Answer to Order to Show Cause as 21 U.S.C.A. § 360a(g) (1) and § 376(d) (2) respectively. The former has been superseded by 21 U.S. C.A. § 874 (1972 Supp.) at 391. Section

376(d) (2) remains unchanged in its wording and is found at 21 U.S.C.A. as indicated and the citation for this is correct. It states: "[A]ny report, recommendations, underlying data, and reasons certified to the Secretary by an advisory committee appointed pursuant to subparagraph (D) of subsection (b) (5) of this section, *shall be made a part of the record of any hearing if relevant and material,* subject to the provisions of section 1006(c) of Title 5.[1] The advisory committee shall designate a member to appear and testify at any such hearing with respect to the report and recommendations of such committee upon request of the Secretary, the petitioner, or the officer conducting the hearing, but this shall not preclude any other member of the advisory committee from appearing and testifying at such hearing."[2]   (Emphasis added).

█ Hoffman's counsel moved twice at prehearing conference on August 1, 1966 that the report, recommendations, underlying data, and reasons certified to the Secretary by his Advisory Committee on the subject of depressant drugs should be produced. See Section 201(v) of the Act.[3] The motion for production, twice made, was twice opposed vigorously by counsel for the Commissioner and twice refused by Hearing Examiner Buttle without any adequate reason being stated for the refusal and without regard to the statute cited above

1. Now 5 U.S.C. § 556(d). These provisions are pertinent to the issues of the instant case insofar as the subsection provides "Except as otherwise provided by statute, the proponent [here the respondents] of a rule or order has the burden of proof."

2. The pertinent regulation, 1966, 21 C.F.R. § 166.101(b) (3), states as follows: "The Chairman shall certify to the Commissioner the report and recommendations of the Committee, including any minority report, together with all the underlying data and a statement of the reasons or basis for the recommendations. The report will include copies of all material considered by the Committee except that in the case of scientific literature readily available in scientific libraries proper ref-

ence may be made to it instead of furnishing actual copies. . . ." See transcript, Prehearing Conference, August 1, 1966, in the Matter of Depressant and Stimulant Drugs, Docket No. FDA–DAC–2, before the Secretary, Department of Health, Education and Welfare, Food and Drug Administration, at 67. On January 25, 1966, this regulation was redesignated without change as Section 166.19(b) (3). The language of the regulation as we have quoted above was in effect in August 1966 and is identical to that set out on page 67 of the transcript.

3. 21 U.S.C. § 321(v). Added: Pub.L. 89–74, § 3(a), July 15, 1965, 79 Stat. 227. Repealed: Pub.L. 91–513, Title II, § 701(a), October 27, 1970, 84 Stat. 1281.

and to the Public Information Act. See 5 U.S.C. § 552. The Government takes the position that this matter was not referred to again until some five years later and that Hoffman has in effect waived its right under the statute. We cannot agree. See Texaco, Inc. v. Federal Power Commission, 117 U.S.App.D.C. 268, 329 F.2d 223 (1963), cert. den. 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963). The opinion in *Texaco*, written by Circuit Judge (now Chief Justice) Burger, is strongly suggestive of the result which we should reach here. The Court of Appeals for the District of Columbia Circuit was construing the Natural Gas Act, Section 19(b), 15 U.S.C. § 717r(b). Texaco and others sought an order to adduce additional evidence in a hearing pending before the Federal Power Commission. The court held that an interlocutory appeal from a refusal of the Commission to permit that evidence to be adduced was not appropriate and that the failure to apply for an interlocutory order was not a waiver of

the ultimate right of Texaco to put the evidence in the record. Judge Burger went on to say, ". . . [T]he appropriate time to petition this court for leave to adduce additional evidence under Section 19(b) of the Natural Gas Act is after this court has jurisdiction over a final order of the Commission on the merits, pursuant to sentences [1] and [3] of Section 19(b)."

██ It is true that in the instant case no motion was made by Hoffmann to put the Advisory Committee report in the record in 1966, but there is small point in any proceeding to move material into the record when its production is refused. We cannot tell whether the failure to produce the Advisory Committee's report and its supporting documents was or was not prejudicial to Hoffmann until we examine them. We believe that we have the jurisdiction, the power, to require such evidence to be put in the record unless it be privileged.[4] Privilege is asserted by the respondents in the language set out below,[5] but

---

4. Cf. North City Area-Wide Council, Inc. v. Romney, 428 F.2d 754, 757 (3 Cir. 1970).

5. "EXAMINER BUTTLE: How about this? [*i. e., the contention that the documents should be produced*].

"MR. PHELPS: We strenuously oppose any motion to lay bare the government's files relating to this. I think these data, reports, minutes and memoranda would be *privileged matter*. The Commissioner made his finding alone, based on recommendations given to him. True, he did review these reports.

"EXAMINER BUTTLE: How about counsel's statement to the effect that they are entitled to them *as a matter of course*? Is there anything to that?

"MR. PHELPS: They are not entitled to them as a matter of course, because it is privileged matter.

\*   \*   \*   \*   \*

"MR. FINNEY: *May I inquire* whether the Presiding Examiner would feel the same way if we made a second request to be supplied only with a copy of the report of the Advisory Committee?

"EXAMINER BUTTLE: What about the report of the Advisory Committee?

"MR. PHELPS: We would oppose that also." (Tr. 68–69).

Cf. the Jencks Act, 18 U.S.C. § 3500 which parallels § 706(d) (2) of the Federal Food, Drug and Cosmetic Act with respect to reproduction of documents by the Government. The Jencks Act requires the Goverment to produce any statement in its possession of a witness called by the Government in a criminal prosecution. Unlike § 706(d) (2), however, production under the Jencks Act is only required pursuant to order of the court on "motion of the defendant". The Jencks Act states as to production: "After a witness called by the United States has testified on direct examination, the court shall, *on motion of the defendant*, order the United State to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." 18 U.S.C. § 3500 (b). (Emphasis added).

no cognizable basis is asserted for the exercise of privilege, and it was admitted by counsel for the Government by the words quoted in note 5 that the Commissioner did review the Advisory Committee's report and did make his "finding" *"based on recommendations given to him"* (emphasis added), that finding being that a hearing should be held in respect to Valium and Librium as to whether they should be subject to control under the Drug Abuse Control Act Amendments of 1965, Federal Food, Drug and Cosmetic Act, P.L. 89–74, July 15, 1965, 21 U.S.C. § 301, et seq.

This blanket argument does not convince us of the correctness of the administrative proceedings. The Commissioner was indeed required to exercise his independent judgment, but that judgment rested on material which was before him concerning which Hoffmann surely had a right to be informed. The objection of Hoffman goes to the fairness of the hearing, and it should be noted that the denial of somewhat analogous reports have been treated as a lack of procedural due process even where the reports have not been mandatorily required by statute.[6]

■ Typical of the Government's arguments is that the ". . . petitioner's application for the material at the prehearing conference was 'merely a "request for . . . information" ' so that the plaintiff was plainly seeking discovery addressed to the discretion of the Examiner. . . ." This contention is incompatible with the statute, with the regulations, and with the actions of the parties. There was no mention of "discretion" by the parties or by the Examiner. There is no suggestion of the exercise of discretion in the statute or its applicable regulation. We cannot accept this argument.

■ Another contention advanced by the Government is that Dr. Frederick E. Shideman, Chairman of the Advisory Committee on Abuse of Depressant and Stimulant Drugs, testified respecting the drug Librium and that Hoffmann could have elicited from him the substance of the Advisory Committee report. What Hoffmann desired was the report of the Advisory Committee for

6. In Gonzales v. United States, 348 U.S. 407, 416, 75 S.Ct. 409, 99 L.Ed. 467 (1955), Gonzales, who was a member of Jehovah's Witnesses and who had been denied conscientious-objector exemption, was convicted, and the conviction was reversed because, although not *expressly* required by Section 6(j) of the Universal Military Training and Service Act, 62 Stat. 612, as amended, a copy of the recommendation of the Department of Justice was not made available to Gonzales and therefore he could not make a meaningful reply, one based on meaningful facts. Mr. Justice Clark cited the decision by Judge Learned Hand in United States v. Balogh, 2 Cir., 157 F.2d 939, 943, judgment vacated on other grounds, 329 U.S. 692, 67 S.Ct. 625, 91 L.Ed. 605, in which Judge Hand stated: "As the case comes to us, the board made use of evidence of which [the registrant] may have been unaware, and which he had no chance to answer: a prime requirement of any fair hearing."

In United States v. Cabbage, 430 F.2d 1037, 1039 (6 Cir. 1970), a Selective Service registrant was denied due process of

law where the FBI report concerning his political activities was placed in his Selective Service file and was before the appeal board without registrant's knowledge and registrant was afforded no opportunity to explain or contradict the information contained in the report. (citing *Gonzales*). Judge Edwards quotes *Gonzales*: "Just as the right to a hearing means the right to a meaningful hearing [cases omitted], so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file. . . ."

In United States v. Owen, 415 F.2d 383 (8 Cir. 1969), Collison, convicted of refusing induction into the armed services, appealed. The Court of Appeals, reversing, held that where adverse commentary by a minister unconnected with the Selective Service System was made part of the defendant's file and considered by the appeal board without defendant being aware of this information or given an opportunity to rebut it, he was denied a *"basic procedural right* and denial could not be corrected. . . ."

examination, not a statement of its contents by its Chairman. We do not know, of course, the length of the report of the Advisory Committee or the amount of data upon which it was based, but we think we can safely assume that it was not inconsiderable. We can hardly believe that the Examiner would have permitted its contents to be brought out as upon cross examination. This argument seems to us to be specious.

The Government urges that "[t]he fact that the reason underlying the [Advisory] committee[']s recommendation may have been ill-founded or that procedures which it utilized may not have been according to prescribed rules or regulations cannot and did not affect Petitioner's right to a fair and impartial hearing[; that] [t]he Commissioner was not required to ask the advice of an advisory committee[; and that] [h]e was certainly not required to second guess its recommendation. What transpired before the advisory committee or the form in which its report was delivered has no meaningful bearing on the validity of the Commissioner's order[; and that] [t]hat order[']s validity was the subject of the hearings which ensued and is dependent upon the existence or nonexistence of substantial evidence of record supporting the Findings of the Director contained in the final order." [7]

It is interesting to observe that "[b]y a notice published March 24, 1972 (37 Fed.Reg. 6107), the Commissioner of Food and Drugs has proposed a rule requiring 'strict separation of functions' in adjudicatory proceedings and prohibiting any officer who acts as an advocate in a hearing from participating in the Commissioner's decision or order. The notice recites: 'The Administrative Conference of the United States and other authorities have recommended that new, more specific regulations be promulgated to establish . . . a clear separation of the litigation and decision functions of FDA officials, employees and attorneys. . . .' " [8] We note also that the FDA has itself acted in large part to end the policy of secrecy and to open its files.[9] This is a desirable change. We can perceive no reason why it should not apply here unless confidential information which would be damaging to the welfare of the United States would be disclosed. No such assertion is made by the respondents. In fact, the respondents do not refuse to make the information available; in effect they simply state they do not desire to do so.

The attitude of the respondents toward Hoffmann has bearing we think on the delicate issue as to whether or not the proceedings before us are regulatory or adjudicatory.

We will order the respondents to produce the report of the Advisory Committee and its accompanying documentation.

---

7. Statement of Respondents in Answer to Order to Show Cause, at 5.

8. Reply of Petitioner, at 19, starred notation.

9. See also lead article, New York Times, May 5, 1972.