ECONOMIC DEVELOPMENT CORPO-
RATION et al., Appellants,

v.

MODEL CITIES AGENCY et
al., Appellees.

No. 74–1976.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1975.

Decided June 30, 1975.

Richard L. Colbert, Kansas City, Mo., for appellants.

Dan G. Jackson, Ralph W. Blinston, Asst. City Attys., and Vernon A. Poschel, Asst. U. S. Atty., Kansas City, Mo., for appellees.

Before HEANEY and STEPHENSON, Circuit Judges, and SMITH, Senior District Judge.*

HEANEY, Circuit Judge.

Appellants, Economic Development Corporation [EDC] and seven members of its board of directors, appeal from the District Court's denial of their application for a preliminary injunction, seeking to prohibit the Department of Housing and Urban Development [HUD] from disbursing approximately one and one-half million dollars in Model Cities funds to the City of Kansas City, Missouri, and to prohibit the City and HUD from allocating those funds to programs administered by groups other than EDC.

EDC is a nonprofit corporation which had been under contract with the City to administer Model Cities funds, including the funds which are the subject of this dispute. Its board of directors includes representatives from seven neighborhood groups (Citizen's Participation Organizations or CPO's) in the Model Cities area; they are the seven named appellants. On July 13, 1973, as a result of a HUD audit in which irregularities in the operation of EDC were discovered, all of EDC's development money was frozen by order of HUD. During the period of the freeze, EDC's contract with the City expired by its terms, and the funds in EDC's possession reverted under the contract to the City. The parties have not entered into a new contract. Instead, the City Council has enacted an ordinance approving an amendment to the Model Cities program which reallocates the funds previously programmed for EDC. The appellants seek to stay the reallocation and spending of those funds.

■ The rule is well settled that
* * * the scope of our review of an order denying a preliminary injunction is very limited. We cannot reverse unless, upon considering the trial court's order, we determine that the trial court abused its discretion. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); E. W. Bliss Company v. Struthers-Dunn, Inc., 408 F.2d 1108, 1113 (8th Cir. 1969).

*Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973). *See also Jones v. Snead*, 431 F.2d 1115, 1116 (8th Cir. 1970).

In its order, the District Court enumerated five requirements of a preliminary injunction—standing, likelihood of success on the merits, inadequacy of a remedy at law, irreparable injury, and balancing of the equities—and declared that the plaintiffs had failed to meet "each of the requirements" and had failed to meet them "cumulatively." Without embracing the sweeping language of the District Court, we conclude that the court did not abuse its discretion in determining that the plaintiffs had failed to establish the substantial probability of success at trial. Accordingly, denial of the preliminary injunction was proper. *See Minnesota Bearing Co. v. White Motor Corp., supra* at 1326–1327.

■■ The appellants bring this action in two capacities. First, they sue in their capacity as a contracting party, urging that the City and HUD have breached a contract with them. They have standing to do so. However, the record, particularly two reports by the Office of the Inspector General of HUD, provides support for the defendants' contention that EDC was poorly managed, had not adopted or implemented acceptable administrative and accounting practices and procedures, and had engaged in unauthorized expenditures, nepotism, and fraudulent loans. The reports also support the view that the problems were, at least in part, attributable to the board

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

of directors as a whole, and that the institution of reforms or controls would not solve the problems. Under the circumstances, the court did not abuse its discretion in concluding that there was no substantial probability that the plaintiffs would succeed in establishing their claim that the City lacked good cause for terminating the contract.

■ The appellants also sue in a second capacity. They assert that they are residents of the Model Cities area, and that they have been and are being injured by the City's unilateral decision to reallocate Model Cities funds without consulting any citizen group. In this capacity, they claim that HUD and the City have violated and are continuing to violate the requirement of 42 U.S.C. § 3303(a)(2) that all Model Cities programs must provide for "widespread citizen participation." We have no doubt that the appellants have standing to bring the action in this capacity. In *North City Area-Wide Council, Inc. v. Romney*, 428 F.2d 754, 757 (3rd Cir. 1970), the Court noted that counsel for HUD had virtually conceded on appeal that a similar citizen group had standing to assert violation of the citizen participation provision, and we find HUD's contrary position in this case to be inexplicable. Surely the residents of the Model Cities area are "arguably within the zone of interests to be protected" by the citizen participation provision of § 3303(a)(2), *see Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970), and the appellants represent at least some of those residents. While it is undoubtedly true,

as appellees insist, that no one citizen group has the right to be the chosen voice of the residents, the claim of any resident that all citizens of the area are being denied participation must be given a hearing.

■ Nevertheless, we are satisfied that the District Court did not abuse its discretion in concluding that there was not a substantial probability that the plaintiffs would succeed in establishing that the reallocation of funds took place without citizen participation.[1] The affidavits and exhibits submitted to the court support the defendants' assertion that the reallocation of EDC funds was accomplished by means of a procedure which involved a variety of citizen inputs, unlike the unilateral city action in *North City Area-Wide Council, Inc. v. Romney, supra*.

The evidence before the court tends to support the following conclusions: The Model Cities Board includes members of the same seven neighborhood CPO's which are represented by the seven named appellants on the EDC board of directors. The Model Cities Board was the prime mover in the process of amending the Model Cities program to reallocate EDC's funds. During June of 1974, three standing committees of that Board held public hearings. Recommendations were also solicited and received from all seven neighborhood CPO's, and none of them objected to the discontinuance of EDC's funding. The amendments to the program were discussed at a series of meetings of the Model Cities Board in June, July and August, and on August 8, 1974, the Board adopted a recommendation for amendment of the pro-

---

1. We read § 3303(a)(2) to require not only that citizens participate in planning but also that they participate in the actual expenditure of funds. However, in our view, the complaint does not allege that the numerous recipients of the funds under the amended program lack citizen participants. Rather, as stated in their brief on appeal, the appellants assert that the City and HUD "planned to reallocate the * * * budget approved for EDC to other city programs without citizen or HUD's approval." The record indicates that the funds were reallocated to other Model Cities operating agencies.

In a letter submitted at this Court's invitation after oral argument, the appellants assert that several of the new grantees are administered by boards which lack participation by Model Neighborhood residents. These contentions were not presented to the District Court and hence, we do not consider them on appeal. *See American General Finance Corp. v. Parkway Bank & Trust Co.*, 520 F.2d 607, at 608 (8th Cir. 1975); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 184 (8th Cir. 1975). The question remains an open one which the District Court can decide at trial.

gram, submitting the recommendation to the City Council. A public hearing on the proposed amendments was held by the Plans and Zoning Committee of the Council on August 19, 1974. The next day, the City Council adopted the amendments. This action was subsequently discussed by the Model Cities Board at its regular meeting on September 5, 1974. The affidavit of the Program Manager for the Area Office of HUD concluded that the program amendment "complies with the citizen participation requirements" of the Act.

In ruling on the propriety of the denial of the preliminary injunction, we must necessarily base our review on the record which was presented to the District Court. Hence, our discussion of the likelihood of success on the merits must not be taken to preordain the eventual outcome of the litigation.

The order of the District Court is affirmed.