**Arlene M. MATTERN**

v.

**Casper WEINBERGER, United States
Secretary of Health, Education
and Welfare.**

**Civ. A. No. 72–2522.**

United States District Court,
E. D. Pennsylvania.

April 30, 1974.

Tri County Legal Services, Reading, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

TROUTMAN, District Judge.

This action challenges the procedure utilized by the Secretary of Health, Education and Welfare [the Secretary], pursuant to Section 204 of the Social Security Act [the Act], to adjust or reduce social security benefits in order to recoup an alleged over-payment. Specifically, plaintiff, on behalf of herself and others similarly situated, seeks injunctive and declaratory relief, requiring the Secretary to conduct an evidentiary hearing prior to adjusting or reducing

social security benefits to which plaintiff is entitled under Title II of the Act. 42 U.S.C. § 401 et seq. Plaintiff challenges the failure to provide an oral hearing prior to the recoupment of an alleged over-payment on the grounds that it is contrary to the purpose of the Act and violative of the Fourteenth Amendment to the Constitution. Presently before the Court are (1) defendant's motion to dismiss the complaint for lack of jurisdiction, (2) plaintiff's motion for a class action determination, (3) plaintiff's motion to convene a three-judge court and (4) cross-motions for summary judgment.

The relevant facts are not in dispute and are as follows: Plaintiff, at the time this action was filed, was fifty-three years old and is presently disabled. In 1971, she filed an application for disabled widow's benefits pursuant to 42 U.S.C. § 402(e)(1)(B)(ii) on the social security earnings record of her deceased husband. Her application was initially denied, but, upon reconsideration, she was found entitled to benefits effective December 1971.[1] Thereafter, plaintiff informed the social security office that she was in financial distress. Upon investigation, the office forwarded a request for a critical case payment to the Philadelphia payment center on the basis of plaintiff's alleged condition of hardship. The payment center failed to consider the statutory waiting period and erroneously certified payment of monthly benefits retroactive to May 1971 rather than December 1971. A check in the amount of $1063.80 was issued to plaintiff. Prior to the receipt of this check, plaintiff received another check in the amount of $119.30, representing her monthly entitlement. According to defendant, plaintiff was notified that the special check for $1063.80 was in error and should be returned.

Upon plaintiff's failure to return the check, she was notified of the alleged over-payment. Plaintiff, thereafter re-to adjust or reduce the amount of her monthly check in order to recoup the over-payment. Plaintiff, thereafter requested waiver of the recovery action and completed a "without fault" questionnaire. In her response, plaintiff admitted receiving the check for $1063.80, which she cashed to pay her bills, but denied the receipt of any notice that the check was not correct until she received the letter, indicating the Secretary's intent to recoup the over-payment. By letter dated October 20, 1972, plaintiff was advised that recovery of the over-payment could not be waived because she was not without fault and she was further advised of her right to request reconsideration of this determination. On November 20, 1972, plaintiff filed a request for reconsideration, and as a result of this request, the adjustment action was not implemented pursuant to Section 5503.5 of the Claims Manual. On December 29, 1972, plaintiff commenced this civil action. Subsequently, the reconsideration decision upheld the initial determination on the ground that plaintiff was not without fault and, therefore, liable for recovery of the over-payment. In order to alleviate undue hardship, recovery by partial adjustment of $30 per month was recommended, commencing with her January 1973 benefit. As a result of this notice, the parties entered into a stipulation continuing plaintiff's full benefits until the disposition of this action.

Section 204 of the Act, 42 U.S.C. § 404, authorizes the Secretary, under regulations prescribed by him, to recover incorrect over-payments or to adjust benefits to provide for such recovery. Section 204 provides in pertinent part:

"(a) Whenever the Secretary finds that more or less than the correct

---

1. It was determined that plaintiff established a period of disability beginning on May 18, 1971. She was not entitled to benefits as of that date, because the Act, at that time, provided for a six-month waiting period between the onset date and entitlement to benefits. The Act, as amended in 1972, provides for a five-month waiting period. 42 U.S.C. § 423(c)(2).

amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

"(1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall apply any combination of the foregoing.
. . .

"(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."

Under subsection (b) of Section 204, no adjustment or recovery shall be made where such person is without fault [2] and such adjustment or recovery would defeat the purpose of Title II of the Act [3]

2. "Fault" is defined in 20 CFR § 404.507 which provides:

"'Fault' as used in 'without fault' (see §§ 404.506 and 405.355) applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault. In determining whether an individual is at fault, the Administration will consider all pertinent circumstances, including his age, intelligence, education, and physical and mental condition. What constitutes fault (except for 'deduction overpayments'—see § 404.510) on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act [42 U.S.C.A. § 1395f(e)], resulted from:

"(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

"(b) Failure to furnish information which he knew or should have known to be material; or

"(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect."

3. The phrase "defeat the purpose" of Title II is defined in 20 CFR § 404.508, which provides:

"(a) General. 'Defeat the purpose of title II [42 U.S.C.A. § 401 et seq.],' for purposes of this subpart, means defeat the purpose of benefits under this title, i. e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs. An individual's ordinary and necessary expenses include:

"(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e. g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII [42 U.S.C.A. § 1395 et seq.]), taxes, installment, payments, etc.;

"(2) Medical, hospitalization, and other similar expenses;

"(3) Expenses for the support of others for whom the individual is legally responsible; and

"(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

"(b) When adjustment or recovery will defeat the purpose of title II [42 U.S.C.A. § 401 et seq.]. Adjustment or recovery will defeat the purpose of title II [42 U.S.C.A. § 401 et seq.] in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses."

or would be against equity and good conscience.[4]

*See also* 20 CFR § 404.506.

20 CFR § 404.901 et seq. of the Social Security Administration regulation sets forth a four-step administrative process by which a claimant may obtain review of a decision to adjust benefits in order to recoup an overpayment. Following an initial determination that an overpayment has been made and that there is no basis for waiver of recovery, the claimant may obtain reconsideration pursuant to 20 CFR 404.914. Subsequent to a reconsidered determination, an individual may request a hearing *de novo* before an administrative law judge, 20 CFR 404.917, and review by the Appeals Council of the Social Security Administration. 20 CFR 404.945. Thereafter, a claimant may seek judicial review in the district courts pursuant to § 205(g) of the Act. 42 U.S.C. § 405(g). During the period that a claimant is pursuing his administrative remedies, there is no provision in the Act or in the regulations, requiring that a hearing must be conducted prior to implementation of any adjustment or recovery. Section 5503.5 of the Claims Manual provides that where reconsideration of an initial determination is requested, "withholding to recoup the overpayment will be further deferred and payment will be continued" until a decision upon reconsideration is made. Thus, under the regulations and provisions of the Claims Manual, adjustment of benefits in order to recoup an overpayment may be implemented following a decision upon reconsideration and there is no provision for a hearing *de novo* before an administrative law judge prior to the implementation of the adjustment.

## I. *Jurisdiction*

In plaintiff's amended complaint, jurisdiction has been asserted under 28 U.S.C. § 1331, 28 U.S.C. § 1343(4), 28 U.S.C. § 1346 and 28 U.S.C. § 1361. In his motion to dismiss for lack of jurisdiction, defendant argues that none of the above provisions confer jurisdiction on this court and that plaintiff's action is barred by Sections 205(g) and 205(h) of the Act. 42 U.S.C. § 405(g), (h).[5]

---

4. "Against equity and good conscience" is defined in 20 CFR § 404.509, which provides:
 " 'Against equity and good conscience' means that adjustment or recovery of an incorrect payment (under title II or title XVIII [42 U.S.C.A. § 401 et seq. or § 1395 et seq.]) will be considered inequitable if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right .(examples (1), (2), and (5)) or changed his position for the worse (examples (3), and (4)). In reaching such a determination, the individual's financial circumstances are irrelevant."

5. Section 205(g) of the Act provides:
 "(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court shall, on motion of the Secre-

Section 205(g) provides that in order to obtain judicial review of a decision of the Secretary, it must be a final decision made after a hearing to which the claimant was a party, thereby requiring exhaustion of administrative remedies. Section 205(h) specifically provides that no action against the Secretary shall be brought under Section 41 [now 28 U.S. C. § 1331] to recover on any claim arising under Title II of the Act. Defendant argues that Section 205(g) provides the exclusive means by which a claimant can obtain judicial review of a decision of the Secretary. Since plaintiff did not seek a *de novo* hearing before an administrative law judge following the denial of her request for reconsideration, it is argued that plaintiff's action is barred for failure to exhaust her administrative remedies. In addition, defendant argues that this action is barred by the specific language in Section 205(h). We conclude that neither the doctrine of exhaustion of remedies nor the specific provisions of Section 205(h) bar plaintiff's action under the facts of this case.

 First, exhaustion is inapplicable because plaintiff claims that the statute and regulations promulgated thereunder are constitutionally insuffi-

tary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.

cient in that they fail to provide a hearing prior to recoupment of an over-payment. Where a plaintiff attacks the constitutionality of the statute under which an administrative agency acts, the attack does not turn upon a factual determination requiring administrative expertise, and the doctrine of exhaustion of administrative remedies, therefore, does not apply. *See* Gainville v. Richardson, 317 F.Supp. 16, 18 (D.Mass. 1970), and cases cited therein.

 Secondly, the prohibition of Section 205(h), barring any action against the Secretary under Section 1331 of Title 28, is inapplicable in that plaintiff is not seeking to "recover on any claim" arising under Title II of the Act. The merits of plaintiff's claim are not before the Court and we are not asked to review any decision of the Secretary. Plaintiff's sole claim is that she is entitled to a hearing prior to a determination to reduce or adjust her benefits, and plaintiff seeks declaratory and injunctive relief to remedy the constitutional deficiencies in the Secretary's procedure. Thus, plaintiff's action is barred by neither Section 205(g) nor Section 205(h). Gainville v. Richardson, *supra*, at 18.[6]

Section 205(h) of the Act, 42 U.S.C. § 405(h) provides:

"(h) The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter."

6. In Johnson v. Robison, 415 U.S. 361, 94 S. Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court considered the threshold issue whether 38 U.S.C. § 211(a), which prohibits judicial review of the decisions of the Administrator of Veterans Affairs, deprived the Court of jurisdiction over plaintiff's constitutional claim challenging the denial of educational benefits to conscientious objectors under the Veterans' Readjustment Act of 1966. 38 U.S.C. §§ 1651–1697. The Court

Plaintiff initially argues that this Court has jurisdiction under 28 U.S.C. § 1331(a),[7] providing original jurisdiction over actions arising under the Constitution, laws or treaties of the United States, where the amount in controversy exceeds $10,000. It is undisputed that the amount in controversy in this case is $1063.80. In order to meet the $10,000 amount in controversy requirement of Section 1331, plaintiff claims in her memorandum that she suffered physical and emotional distress as a result of the Secretary's action. Plaintiff's amended complaint does not, however, include a request for any relief to compensate her for her suffering. Assuming arguendo, that this claim were properly before the Court, we would, nonetheless, conclude that it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount". St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); Nelson v. Keefer, 451 F.2d 289, 292–293 (3d Cir. 1971). In addition, plaintiff can find no solace in the fact that she purports to represent a class, for the claims of the class are not of the nature which would permit their aggre-gation under Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) to satisfy the jurisdictional amount requirement.[8] Thus Section 1331(a) does not confer jurisdiction in this case, in that the $10,000 amount in controversy requirement has not been satisfied.

Secondly, plaintiff asserts 28 U.S.C. § 1343(4), providing jurisdiction, without regard to amount in controversy, to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, as the jurisdictional basis of her claim. Plaintiff's claim, however, arises under the Social Security Act and it has consistently been held that the Social Security Act is not an Act of Congress providing for the protection of civil rights. Russo v. Kirby, 453 F.2d 548 (2d Cir. 1971); McCall v. Shapiro, 416 F.2d 246 (2d Cir. 1969). Thus, this Court lacks jurisdiction over plaintiff's claim under Section 1343(4).

Plaintiff's allegation that 28 U.S.C. § 1346(a)(2)[9] provides jurisdiction likewise must fail. The Tucker Act confers concurrent jurisdiction in the Dis-

---

held that Section 211(a) does not bar judicial consideration of questions concerning the constitutionality of veterans' benefits legislation, but bars only actions seeking review of decisions of law or fact that arise in the administration of the act. To the extent Section 211(a) is similar to Section 205(h) of the Social Security Act, the analysis utilized by the Supreme Court in *Johnson* supports our conclusion that Section 205(h) does not bar judicial consideration of questions concerning the constitutionality of social security administration regulations and procedures.

7. 28 U.S.C. § 1331(a) provides:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

8. Under Snyder v. Harris, *supra*, aggregation of claims to satisfy the amount in controversy requirement is permissible "only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. at 335. Under this test, plaintiff argues that the members of the class have a "common and undivided interest" in the Social Security Trust Fund. We find this contention to be without merit.

9. 28 U.S.C. § 1346(a)(2) provides:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

trict Court and the Court of Claims of any claim against the United States, not exceeding $10,000 in amount, founded upon the Constitution or any Act of Congress. Plaintiff seeks declaratory and injunctive relief, and this provision has been construed by the ·Supreme Court as authorizing only actions for money judgments and not suits for equitable relief against the United States. Richardson v. Morris, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). Accordingly, Section 1346(a)(2) does not confer jurisdiction upon this Court.

■ The final jurisdictional provision under which plaintiff brings her action is the Mandamus Act, 28 U.S.C. § 1361, which provides:

> "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

The legislative history of the mandamus statute reveals that the statute's construction turns upon traditional mandamus law, and the Court of Appeals in Richardson v. United States, 465 F.2d 844 (3d Cir. 1972), cert. granted, 410 U.S. 953, 93 S.Ct. 1420, 35 L.Ed.2d 686 (1973), summarized the prior law:

> "In order for mandamus to issue, a plaintiff must allege that an officer of the Government owes him a legal duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.' [citations omitted] An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." 465 F.2d at 849.

Applying these standards to the facts of the instant case, neither the provision of the Act in question nor the regulations promulgated thereunder compel the Secretary to conduct a hearing prior to the recoupment of an over-payment. While the statute and regulations are silent on this issue, they must be read in conjunction with the requirements imposed upon governmental bodies by the due process clause of the Fifth Amendment, and our examination of these provisions must be conducted in conjunction with the decisions of the Supreme Court construing the due process clause. The Mandamus Act does not distinguish between a statutory duty owed to the plaintiff by the Secretary and a constitutional duty owed by the Secretary. Whether the Secretary owes plaintiff a duty under the Fifth Amendment of the Constitution can be determined only after an analysis of the requirements of the due process clause and their application to the statutory and regulatory provisions at issue. In the instant case, plaintiff relies upon Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), to establish the existence of the constitutional right to a prior hearing in administrative recoupment cases. She argues that *Goldberg* imposes the constitutional duty upon the Secretary to conduct a hearing prior to the adjustment or reduction of her benefits in order to recoup an over-payment and that this duty is ministerial and devoid of discretion in that it is compelled by the Constitution. The denial of the opportunity for such a prior hearing, according to plaintiff, gives rise to jurisdiction under the Mandamus Act. We agree with the Court in Elliot v. Weinberger, 371 F.Supp. 960 (D.Hawaii 1974), that the applicability of *Goldberg* and its progeny is sufficiently apparent to establish jurisdiction under Section 1361. *See also* Martinez v. Richardson, 472 F. 2d 1121 (10th Cir. 1973).[10]

---

10. An alternative basis for sustaining jurisdiction under Section 1361 is found in Chaudoin v. Atkinson, 494 F.2d 1323 (3d Cir. 1974), where the Court of Appeals stated: ". . . a request for relief under § 1361 requires 'the court [to] utilize all relevant legislative and other materials to determine the scope of discretion or power delegated to the officer.' "

In so holding, the Court relied on Carey v. Local Board No. 2, Hartford, Connecticut, 297 F.Supp. 252 (D.Conn.1969), aff'd 412 F.Supp. 71 (2d Cir. 1969), where the Court held that the fact that the duty involved be-

## II. *The Class Action*

In her amended complaint, plaintiff purports to represent a class consisting of "all persons eligible for Social Security OASDI benefits, and whose benefits have been or will be reduced, terminated or otherwise summarily adjusted by defendant without notice and opportunity for a prior administrative hearing." Preliminarily, we note at the time this action was filed plaintiff was not a member of the class she purports to represent, in that her benefits had not as yet been reduced. By subsequent administrative action, however, her request for reconsideration was denied and the adjustment was scheduled for implementation. It was only by the subsequent stipulation between the parties that her benefits have been permitted to continue.

In order to establish her right to maintain a class action, it is plaintiff's burden to satisfy all of the requirements of Rule 23(a) and one of the subdivision of 23(b). Philadelphia Electric Co. v. Anaconda Brass Co., 43 F.R.D. 452, 457 (E.D.Pa.1968). With respect to Rule 23(a), defendant's affidavit reveals that in 1970 there were 1,250,000 over-payment cases, from which 12,000 requests for reconsideration were filed, and 1600 requests for hearings were filed. This alone establishes that the class is so numerous that joinder of all members is impractical. The sole issue in this action is whether adjustment of social security benefits in order to recoup an over-payment may be accomplished absent a prior hearing, and this issue presents questions of law and fact common to the class. Plaintiff's claim in this respect is typical of the claims of the class. Finally, there is no issue of adequate representation, and we recognize the competency of plaintiff's counsel. Plaintiff is proceeding under Rule 23(b)(2) which concerns the request for injunctive or declaratory relief and is specifically designed for situations seeking the vindication of constitutional rights. Upon a finding that plaintiff

comes clear only after the construction of the statute does not preclude relief under 28 U.S.C. § 1361. In so holding, the Court relied on Roberts v. United States, 176 U.S. 221, 20 S.Ct. 376, 44 L.Ed. 443 (1900), where it was stated:

"Unless the writ of mandamus is to become practically valueless, and is to be refused even where a public officer is commanded to do a particular act by virtue of a particular statute, this writ should be granted. Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must, therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. . . . If the law directs him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language."

We read *Chaudoin* and *Carey* to permit the court to review the appropriate constitutional provisions, legislative material and judicial decisions in order to determine whether under any of these three alternatives the basis of jurisdiction is provided under the Mandamus Act. Accordingly, we must proceed to determine whether the Secretary owes plaintiff a duty under the Fifth Amendment to the Constitution and the decisions of the courts construing that Amendment to conduct a hearing prior to the adjustment of her benefits and we may assume jurisdiction under Section 1361 for the purpose of making this determination.

Also significant is the recent decision of the Supreme Court in Christian v. New York State Dept. of Labor, 414 U.S. 614, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974), where plaintiffs challenged the Unemployment Compensation for Federal Employees Program, 5 U.S.C. § 8501 et seq. on the ground that they were denied benefits without a prior hearing. The district court dismissed the constitutional claims against the federal defendants, and, on appeal, plaintiffs attacked this ruling, arguing that mandamus jurisdiction lies where the act of a federal official, although authorized by statute, is alleged to violate the Constitution, relying on Garfield v. United States ex rel. Goldsby, 211 U.S. 249, 29 S.Ct. 62, 53 L.Ed. 168 (1908). At oral argument the Solicitor General conceded jurisdiction under the Mandamus Act. The Court, therefore, did not pass on this issue, despite the fact that the Court may *sua sponte* pass on jurisdictional questions.

has satisfied the requirements of Rule 23(a) and Rule 23(b)(2), plaintiff's motion for a class action determination will be granted as modified in our order.

### III. The Three-Judge Court

Plaintiff requests the convening of a three-judge court on the ground that she is challenging the constitutionality of Section 204 of the Act, 42 U.S.C. § 404. Plaintiff, however, does not challenge the right of the Secretary to recoup over-payments, but merely challenges the procedure by which it is done. The language of the statute is silent on the methods by which over-payments are recovered, and it specifically provides that over-payments are to be recovered "under regulations prescribed by the Secretary". Thus, plaintiff's attack is directed toward the constitutional deficiency of the regulations in failing to provide an evidentiary hearing in advance of recoupment. Under such circumstances, a three-judge court is not required, Mills v. Richardson, 464 F.2d 995, 1001 (2d Cir. 1972) and, accordingly, plaintiff's motion for the convening of a three-judge court will be denied.

### IV. The Merits

The issue before the Court, as previously indicated, is whether the failure of the regulations promulgated pursuant to Section 204 to provide an opportunity for an evidentiary hearing prior to the adjustment of social security benefits in order to recoup an over-payment is (1) contrary to the purpose of the Act and (2) unconstitutional under the Fifth Amendment to the Constitution.

### V. The Purpose of the Act

The general purpose of the old-age, survivor and disability insurance provisions of Title II of the Act is to protect workers and their dependents from the risk of loss of income due to the insured's old age, death or disability. Delno v. Celebreeze, 347 F.2d 159, 161 (9th Cir. 1965). In the event an over-payment is made, Section 204(a) of the Act authorizes the Secretary to adjust or decrease such benefits in order to recover the over-payment. Section 204(b), however, contains a provision providing for the waiver of adjustment of recovery under certain circumstances. Where an individual is found without fault and adjustment or recovery would either defeat the purpose of Title II or be against equity or good conscience, adjustment or recovery may be waived. In the regulations, 20 CFR § 404.508, "defeat the purpose of title II" means "to deprive a person of income required for ordinary and necessary living expenses."

The manifest purpose of Section 204(b) of the Act is to render more equitable the recovery of incorrect payments to individuals, and the Secretary goes to great length to justify its "paper hearings". It is conceivable that the determination that an overpayment has been made can be readily determined in an *ex parte* proceeding by the examination of Social Security records and cancelled checks. The critical questions of "fault" and whether recovery would "defeat the purpose" of the Act or be "against equity and good conscience" are less susceptible to a summary determination in an *ex parte* proceeding. In her amended complaint, plaintiff alleges that she has no other source of income and is totally disabled. She further alleges that if her benefits were reduced as proposed she would be unable to provide the bare necessities of life. Considering the "compassionate" purpose of the waiver provision, it appears incongruous that its purpose would mandate that the critical determinations be made summarily on an *ex parte* basis. Rather, the purpose of the Act contemplates that an individual who seeks to present evidence tending to establish the applicability of the waiver provision must be given an opportunity to do so prior to adjustment or reduction of benefits. Accordingly, we conclude that the failure of the regulations to provide a hearing prior to recoupment is contrary to the purpose of Title II of the Act.

This conclusion, however, does not end our inquiry for only a finding

that the Secretary owes plaintiff a constitutional duty which is so positively commanded as to be devoid of judgment or discretion will support jurisdiction under Section 1361. We must, therefore, proceed to an analysis of the due process issue.

*The Due Process Issue*

The requirements of procedural due process apply only to the deprivation of interests encompassed within the Fifth and Fourteenth Amendments' protection of liberty and property. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, the threshold question presented is whether the nature of plaintiff's asserted property interest is within the range of interests protected by the Due Process Clause of the Fifth Amendment. Initially, we note that plaintiff does not claim a property interest in the amount of the overpayment nor does she challenge the Secretary's right to recoup an overpayment by means of a civil suit.[11] We are concerned solely with the monthly social security benefits to which plaintiff is entitled pursuant to 42 U.S. C. § 402(e)(1)(B)(ii). Plaintiff was found qualified by the Social Security Administration to receive disabled widow's insurance benefits on the social security record of her deceased husband. As long as she continues to satisfy the statutory requirements of the Act, plaintiff is entitled to receive benefits pursuant thereto. Plaintiff's property interest in her monthly benefits amounts to a statutory entitlement and, therefore, constitutes a property interest protected by the Due Process Clause of the Constitution.

The basic principles of due process are well established: Parties whose rights are affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. Fuentes v. Shevin, 407 U.S. 67, 92

S.Ct. 1983, 32 L.Ed.2d 556 (1972). It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner". Fuentes v. Shevin, *supra,* at 80; Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). In the instant case, the regulations permit the adjustment of benefits following the summary reconsideration decision on the question of waiver, and they permit the implementation of the adjustment prior to an evidentiary hearing before an administrative law judge. To the extent that the regulations fail to provide an opportunity for evidentiary hearing before an administrative law judge prior to the reduction of benefits, we conclude that the procedure utilized to recoup over-payments is constitutionally deficient in that it fails to provide an evidentiary hearing "at a meaningful time". Plaintiff's benefits are a matter of statutory entitlement and may not be terminated, reduced or otherwise adjusted absent an opportunity for a prior hearing. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The Secretary argues that Goldberg v. Kelly, *supra,* and its progeny are inapplicable to Title II of the Act and asserts several reasons in support of his argument. First, the Secretary contends that *Goldberg* and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) are distinguishable from cases arising under Title II in that the decisions in *Goldberg* (termination of welfare benefits) and *Sniadach* (garnishment of wages) were based on need. Under Title II, the question whether one is entitled to benefits has nothing to do with one's financial situation or need. *Goldberg* and *Sniadach,* however, merely emphasized the special importance of welfare benefits and wages, and they did not carve out a rule of necessity. Fuentes v. Shevin, *su-*

---

11. Section 5501 of the Claims Manual provides that the Social Security Administration shall recoup overpayments by withholding benefits or by requesting the overpaid person to refund the amount in excess of the correct payment. Where waiver is not applicable and the overpaid person refuses to make a refund, Section 5503.9 of the Claims Manual provides that the Secretary should consider recovery by civil suit.

*pra,* at 89. The Court in *Fuentes* clearly rejected the narrow interpretation that the Secretary urges us to adopt, holding:

> ". . . Both decisions were in the mainstream of past cases, having little or nothing to do with the absolute 'necessities' of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect." (citations omitted) 407 U.S. at 88.

It is, therefore, apparent that under the present law need or necessity do not constitute the *sine qua non* upon which the right to procedural due process is founded.[12]

Secondly, the Secretary argues that the weight of judicial authority supports his position that *Goldberg* is inapplicable to cases arising under Title II. In Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151, rehearing denied, 405 U.S. 1033, 92 S.Ct. 1274, 1296, 31 L.Ed.2d 490 (1972), the Supreme Court was faced squarely with the question whether *Goldberg* applied to cases arising under the Act. In the light of new regulations adopted by the Secretary, the Court remanded the case for reconsideration under the new regulations. The Secretary relies on *Wright* for the proposition that an evidentiary hearing is not a *per se* requirement prior to the adjustment of social security benefits in order to recoup an overpayment. We believe that the Secretary is reading too much into that decision, but it is significant in that all cases decided subsequent thereto were based on the new regulations adopted by the Secretary. The Secretary also relies on Anderson v. Finch, 322 F.Supp. 195 (N.D.

Ohio 1971), remanded, 454 F.2d 596 (6th Cir. 1972) and Messer v. Finch, 314 F.Supp. 511 (E.D.Ky.1970), judgment vacated for mootness, 400 U.S. 987, 91 S.Ct. 455, 27 L.Ed.2d 435 (1971), in support of his argument. These cases, however, were decided prior to *Fuentes,* and since *Fuentes,* the weight of judicial authority establishes that procedural due process requires an evidentiary hearing prior to termination or adjustment of social security benefits. Elliot v. Weinberger, 371 F.Supp. 960 (D.Hawaii 1974), (hearing required prior to adjustment of social security benefits in order to recoup an over-payment); Eldridge v. Weinberger, 361 F.Supp. 520 (W.D.Va.1973) (hearing required prior to termination of social security benefits); Williams v. Weinberger, 360 F.Supp. 1349 (W.D.Ga.1973) (hearing required prior to termination of social security benefits). *But see* Jarbo v. Weinberger, 374 F.Supp. 310 (W.D. Wash.1973).

■ Finally, the Secretary argues that a pre-recoupment trial type hearing would impose an insuperable burden upon the Title II program. In support of this argument, the Secretary notes that in 1970 there were 1,250,000 over-payment cases and alludes to the financial and administrative burden involved. Such burden cannot override plaintiff's manifest due process right to a prior hearing. The Supreme Court in *Goldberg* and *Fuentes* has specifically rejected this argument where a hearing is clearly required by the Due Process Clause. Moreover, the Court in Eldridge v. Weinberger, *supra,* at 525–527, specifically rejected this argument in the context of a social security case.

12. In his argument, the Secretary relied heavily on Torres v. New York State Dept. of Labor, 321 F.Supp. 432 (S.D.N.Y.1971), vacated and remanded, 402 U.S. 968, 91 S. Ct. 1685, 29 L.Ed.2d 133 (1971), adhered to, 333 F.Supp. 341 (S.D.N.Y.1971), aff'd, 405 U.S. 949, 92 S.Ct. 1185, 31 L.Ed.2d 228 (1972). In *Torres,* the lower court upheld the constitutionality of the New York State Unemployment Compensation statutes. The Court held that *Goldberg* did not apply to unemployment compensation because the need was not a factor in that program.

*Torres* was decided prior to *Fuentes,* and since *Fuentes,* three-judge courts in Pregent v. New Hampshire Department of Employment, 361 F.Supp. 782 (D.W.H.1973) and in Steinberg v. Fusari, 364 F.Supp. 922 (D. Conn.1973), rejected the *Torres* rationale in the light of *Fuentes* and held that an evidentiary hearing is required prior to the termination of unemployment benefits. *See also* Wheeler v. Vermont, 335 F.Supp. 856 (D. Vt.1971). The *Steinberg* case came out of the same circuit as did *Torres* and was apparently overlooked by the Secretary.

See also Richardson v. Wright, *supra,* at 223–226 (Brennan, J., dissenting); Elliot v. Weinberger, *supra.* A prior hearing always imposes some costs in time, effort and expense, but these costs cannot outweigh the constitutional right to such a hearing. Fuentes v. Shevin, *supra,* at 90 n. 22.

We conclude that the Secretary owes plaintiff a constitutional duty to afford an opportunity for an evidentiary hearing prior to the adjustment of social security benefits in order to recoup an overpayment. This duty, arising out of the Due Process Clause of the Fifth Amendment, is so positively commanded by the cases construing that amendment as to be free from doubt. Accordingly, our conclusion in this respect supports our jurisdiction under the mandamus statute, 28 U.S.C. § 1361.

Once it is determined that the protection of due process applies, the next consideration is what due process safeguards are required. It is at this point that due process is flexible to the extent that only such procedural protection is required as a particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the governmental function involved as well as the private interest that has been affected by governmental action. Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). In balancing the interest of the respective parties, we now become more sensitive to defendant's argument of administrative burden. Plaintiff does not seek to have us impose the full panoply of procedural safeguards upon the Secretary, rather she seeks only an opportunity to present her case at a hearing prior to any adjustment of her benefits. Accordingly, our consideration of this case will be so limited. We hold that a recipient of social security benefits is entitled by the Due Process Clause of the Fifth Amendment to an opportunity to a hearing prior to the adjustment of his social security benefits in order to recoup an over-payment. The recipient must be accorded notice of his right to a hearing in a conspicuous manner and given sufficient time to exercise this right. We do not hold that a hearing must be held in every case, in that a voluntary, intelligent and knowing waiver of the right may obviate the need for a hearing. This, of course, presupposes adequate notice of the right to a hearing. Moreover, we see no reason why the opportunity for a hearing cannot be afforded within the present procedural framework of the Social Security Administration. The procedures followed in a general determination of qualification to Title II benefits as followed in this case need not be varied except to suspend the implementation of the adjustment of benefits until an opportunity for a hearing is afforded.

For the foregoing reasons, defendant's motion for summary judgment will be denied and plaintiff's motion for summary judgment will be granted.