379 F.Supp. 28 (1974)
Mae JAMIESON, on behalf of herself and all others similarly situated
v.
Caspar WEINBERGER, Individually and as Secretary of Health, Education and Welfare.
Civ. A. No. 73-585.
United States District Court, E. D. Pennsylvania.
June 17, 1974.
*29 Jonathan M. Stein, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.
Robert E. J. Curran, U. S. Atty., Paul E. Holl, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

MEMORANDUM OPINION
BECHTLE, District Judge.
This case is before the Court on defendant's motion to dismiss for lack of jurisdiction or, in the alternative, for summary judgment. Plaintiff, Mae Jamieson, instituted a purported class action alleging that she was denied due process[1] because she was not provided an oral hearing prior to the imposition of a $20 downward adjustment of her *30 monthly widow's benefits of $118.40 that has been, and continues to be, payable under Title II of the Social Security Act. The adjustment was made to recoup an erroneously issued $592 (five times $118.40) check, which she does not dispute having received. She asserts the hearing is necessary prior to any adjustment so that she may show that she was without fault in causing the issuance of the check and that it would be against the purpose of Title II of the Act for the Secretary of Health, Education and Welfare ("HEW") to recoup the overpayment from her benefits.
From the information in an affidavit of a deputy director of the Social Security Administration, we obtain the following facts: In July of 1962, plaintiff was issued a check for $255, constituting the lump sum death benefit payment toward the burial expenses of her deceased husband who died fully insured under the Act. Almost six years later, she applied for widow's disability benefits on June 24, 1968, based on her deceased husband's wage record. This application was denied October 9, 1968. Since she did not seek further review of that determination, the Secretary sent her claims folder to the Federal records center for storage.
On July 8, 1971, she applied for monthly old-age survivor's insurance benefits on her deceased husband's wage record and elected to receive reduced widow's benefits beginning with the month she attained age 60. Approval of the application was delayed until December 5, 1971, pending location of her original claims folder for disability benefits which contained proof of marriage to her deceased husband. At that time, the Secretary determined that she was entitled to benefits at the rate of $118.40 a month.
Before two checks (one for $236.80 representing a monthly benefit payment of $118.40 for October, the month she attained age 60, and November; the other for $118.40 for the month of December) were mailed to her on January 5, 1972, and negotiated two days later, plaintiff visited the district office on December 5, 1971, and inquired about the processing of her July 8, 1971, application; because she had not up to that time received any monthly checks. In response to her inquiry, the district office requested her to file a second application. She did so on January 24, 1972, without informing the district office that she had been notified that her first application for widow's benefits had been approved and that she had received the two checks totalling $355.20, representing benefit payments for the last three months of 1971 in response to her July, 1971, application. She also failed to advise the district office that she had cashed these two checks on January 7, 1972. Still later, she received a check of $118.40 for monthly benefits on February 3 and again on March 3, 1972, due her on the first application.
On March 24, 1972, several days after being notified that her second application (the one that was filed January 24, 1972) for widow's benefits had been approved and that the rate was $118.40 per month, she was mailed a check for $592. This check covered payments of $118.40 believed by the Administration to be due her for the five-month period from October of 1971 through February of 1972. Since she had previously received and negotiated checks of $118.40, or a multiple thereof, for those five months, the $592 check represented duplicate payments for those months. The Administration became aware of the error from its own records, and discontinued issuing any more checks to plaintiff pursuant to the January 24, 1972, application. However, monthly payments under the July 8, 1971, application were kept current on the original rate without reduction.
For a better understanding of the significance of what transpired later, it may be helpful to set forth the pertinent provisions of two subdivisions of sections of the Act. Section 204(a)(1) commands the Secretary to make proper adjustment or recovery where an overpayment has been made, except from *31 "any person who is without fault if such adjustment or recovery would defeat the purpose" of Title II of the Act "or would be against equity and good conscience." Regarding notice and opportunity to be heard, § 205(b) provides that upon request by an applicant or other interested potential beneficiary who makes a showing in writing that his or her rights may be prejudiced by a decision of the Secretary, he "shall give such applicant and such other individual reasonable notice and opportunity for a hearing with respect to such decision. . . . Any such request with respect to such a decision must be filed within such period after such decision as may be prescribed in regulations . . ., except that the period so prescribed may be not less than six months after notice of such decision is mailed to the individual making such request . . ." (Emphasis supplied.) This subsection further authorizes the Secretary on his own motion to hold such hearing as he may deem necessary or proper in the execution of the Act. The Secretary concedes that the Act does not expressly prevent him from holding a hearing prior to decision. There is no dispute that the regulations of the Secretary do not provide for a preadjustment hearing.
In July of 1972, plaintiff was notified by a hand-delivered letter of the overpayment determination and that if she believed that the Secretary's decision was incorrect, she could request that her case be reexamined but that such request must be made not later than six months of the notice. The letter also stated that, beginning with the month of October, 1972, and ending with the month of February, 1973, her monthly benefit checks would be withheld to cover the overpayment. The letter provided:
"Under social security law, any overpayment must be withheld from benefits or paid back unless both of the following are true:
1. The overpayment wasn't your fault in any way and you cashed the check(s) because you thought they were correct, and
2. You couldn't meet your necessary living expenses if you had to pay back the overpayment or have it withheld from your social security benefits; or it would be unfair for some other reason."
The letter also advised her that if she met both of the above conditions to call, write or visit any Social Security office within 30 days from receipt of the letter and that, if they did not hear from her within that time, the Administration would withhold her checks for the mentioned five months in keeping with their preliminary decision.
On October 10, 1972, plaintiff again visited the district office and filled out a "Without Fault" questionnaire in support of her request that recovery of the overpayment be waived by the Administration. She was notified by letter dated January 31, 1973, that her request for waiver had been denied; but because of her financial situation, the $592 amount would be recovered at a less drastic rate than formerly proposed, but over a longer period. This was to be done by merely adjusting her monthly benefits downward by $20 per month and that she could ask for a reconsideration of her case within six months and submit any additional available evidence in support of waiver on the part of the Administration. The $20 amount was thereafter withheld from her February and March, 1973, checks.
On March 15, 1973, she brought the action now before us. The gist of her complaint is that the Administration's downward adjustment of her monthly benefits without adequate prior notice of the reason for it and an opportunity for a prior oral hearing violated her right to due process of law. She seeks to have such practices declared unconstitutional and to enjoin the defendant from engaging in them. She also asks the Court to issue an order "restoring to the status quo . . . all benefits currently suspended, terminated or reduced *32 to all OASDI beneficiaries who failed to be afforded opportunity for a prior oral evidentiary hearing."
Accompanying the complaint is a motion for convening a Three-Judge Court. The basis for the motion is that plaintiff seeks to restrain the defendants from the enforcement, operation, and ex-execution of the Act insofar as such Act permits termination, suspension, or reduction of benefits without the opportunity for a prior hearing on disputed issues of fact as required by the Fifth Amendment to the Constitution.
Asserting that the matter in controversy exceeds the value of $10,000, exclusive of interest and cost, and arises under the Fifth Amendment and the Social Security Act, plaintiff invokes the jurisdiction of this Court under 28 U.S. C. § 1331(a), the general Federal question provision of the Judicial Code; and also § 1343(4), for relief under any Act of Congress providing for the protection of civil rights. Should the Court conclude that the matter in controversy does not exceed $10,000, then jurisdiction is sought under 28 U.S.C. § 1337 concerning actions arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies; § 1346(a)(2), the Tucker Act; and § 1361, regarding actions in the nature of mandamus to compel an officer of the United States to perform a duty owed to plaintiff. Jurisdiction is also predicated upon the Administrative Procedure Act, 5 U.S.C. §§ 701-704.
The Administration treated the filing of the complaint as a request for reconsideration under the rules set out in § 5503.5 of its Claims Manual. By letter dated March 29, 1973, it notified plaintiff that pending review of recoupment of the overpayment, the $20 adjustment decision was withdrawn and that she shortly would receive checks of $20 each for the months of February and March, 1973, to compensate for the adjustment in her checks for those months.[2] Thereafter, she received the full amount of her monthly benefits. Consequently, she has received a part of the relief for which she sued.
In May and June of 1973, two individuals sought to intervene in this action. The first (Albert Koff) asserts that he was entitled to old-age retirement benefits of $225.80 per month but that they were suspended for three months for an overpayment resulting from alleged excess earnings in 1972. The other (Laura Upshur), a widow, claims the benefits of her child (Maxine) were withheld to recover alleged duplicate payments occurring over a period of approximately 21 months. Each claims the benefits were suspended without being given notice or an opportunity for a hearing before the suspensions were made.
By her first proposed amendment to the complaint filed July 5, 1973, plaintiff seeks to assert that defendant violates § 204(b) of the Act by making adjustments or recoveries in cases where persons are without fault and where adjustment or recovery would defeat the purposes of the Act. Further, that defendant violates due process by enforcing that subsection by recovering Title II benefits from beneficiaries without adequate notice and opportunity for a hearing before an impartial hearing officer at which the waiver provisions of § 204(b) could be asserted and thereby insure complete compliance with the Act.
On August 10, 1973, the Administration notified plaintiff that pursuant to the request of her attorney her claim for waiver of the overpayment had been reconsidered but that it was adhering to its original finding that she was "not without fault" in causing the overpayment of $592. Enclosed was a copy of the determination by the Chief of the Reconsideration Branch of the Administration *33 that the overpayment must be recovered in accordance with § 204(a)(1) of the Act. The letter specifically stated:
"If you believe that the Reconsideration Determination is not correct, you may request a hearing before an administrative law judge of the Bureau of Hearings and Appeals. If you want a hearing you must request it not later than 6 months from the date of this notice. You should make any such request through your social security office. Please read the enclosed leaflet for a full explanation of your right to appeal." (Emphasis added.)
On December 17, 1973, the defendants after filing an answer to the complaint on May 15, 1973, filed a motion to dismiss the complaint for lack of jurisdiction or in the alternative for summary judgment.
By a second proposed amendment to the complaint, filed February 27, 1974, plaintiff, after pointing out therein that § 205(b) mandates that notice and opportunity for a hearing be given after the Secretary has rendered a decision, seeks to assert more clearly that § 204(a), the overpayment recoupment provision of the Act, and § 205(b), on their face and as enforced, deny due process to her and the class she claims to represent and, therefore, should be enjoined.
On the last day of April, 1974, two other individuals sought to intervene. One of them (Albert J. Suffern) says his February, 1974, old-age retirement benefits of $211.80 were cut off to recover an alleged overpayment of $91 because of a 1971 earnings record. The other (Richard Apfelbaum) asserts that his disability benefits of $171 were terminated. They also claim, in common with the others, the failure of an opportunity for a hearing prior to suspension or termination. The defendant opposes the motions to intervene as well as the motions to amend.
The proposed amendments to the complaint, except to the extent that they make claim for relief on behalf of those seeking to intervene and for other persons similarly situated or assume that such individuals are already parties to this action, will be allowed.
Plaintiff's complaint regarding the constitutionality of § 205(b) is not about a specific command of that subsection but rather in Congress' leaving to the discretion of the Secretary the right to act in an area where the Constitution allegedly requires a preadjustment personal hearing. That is, the Act's omission to require the affording of an opportunity for a hearing before an adverse decision, to the effect that the Secretary intends to adjust benefits for the purpose of recovering an overpayment, is rendered. The right to provide the answer to such a constitutional question is beyond the authority of the Secretary. See, Oestereich v. Selective Service Bd., 393 U.S. 233, 242, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). As the Supreme Court said in Johnson v. Robison, 415 U.S. 361, 367, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974), in quoting the District Court, "`[T]he questions of law presented in these proceedings arise under the Constitution, not under the statute whose validity is challenged.'" Therefore, a statute other than § 205(g) of the Act must be relied upon for jurisdictional purposes here. At the outset, I find both the constitutional challenge and the asserted Social Security Act violations, which raise Federal questions, to be substantial ones.

I. Jurisdiction over plaintiff's claim of deprivation of due process and of the unconstitutionality of § 205(b) of the Social Security Act

Sections 1331(a) and 1343(4) may not be validly resorted to here because the jurisdictional amount of $10,000 is not involved. Yoder v. Assiniboine and Sioux Tribes of Fort Peck Ind. Res., 339 F.2d 360, 364 (9th Cir. 1964), citing Healy v. Ratta, 292 U.S. 263, 269-270, 54 S.Ct. 700, 78 L.Ed. 1248 *34 (1934); Mattern v. Weinberger, 377 F. Supp. 906 (E.D.Pa., decided April 30, 1974). ". . . A party asserting § 1331 [(a)] jurisdiction has the burden of establishing by competent and preponderate evidence that his claims exceed $10,000. Normally an allegation of $10,000 damages made in good faith is sufficient, but if it appears to [be] a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction." (Footnotes omitted.) Davis v. Shultz, 453 F.2d 497, 501 (3rd Cir. 1971). This quote applies equally to a complaint filed in an action the jurisdiction of which is based on § 1343(4). Should the Administration recoup the entire overpayment, the most that will be recovered from the plaintiff is $592. Thus, it appears to be a legal certainty that the jurisdictional amount is not involved in plaintiff's action.
Plaintiff's grievance is not of the kind which is amenable to the mandamus section of the Judicial Code. The Court is not unmindful of the recent decision of my brother United States District Judge E. Mac Troutman in the case of Mattern v. Weinberger, supra, where it was held that mandamus is available as a jurisdictional basis for the claim. With all due respect to the reasoning and wisdom that was provided to support that conclusion in the Mattern case, I do not believe that the performance that the plaintiff seeks here is the kind of duty that can be said to be a clear, plain, ministerial command that is envisioned in the concept of mandamus. Under § 1361, mandatory relief will lie only to compel the performance of a plain duty. Davis v. Shultz, supra, 453 F.2d at 502; Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965). She does not point to any specific regulation mandating a preadjustment hearing before the Administration renders its decision.[3] On its face, § 205(b) does not require such a hearing, although it clearly authorizes the Secretary on his own motion to conduct a hearing before it renders a decision. The mandamus section does "not lie to compel the discharge of an action committed to discretion." Davis v. Shultz, supra. She insists, however, that the Due Process Clause of the Fifth Amendment dictates that the Administration hold a hearing before deciding to adjust her benefits and asks this Court to make a declaration to that effect. In Daniel v. Goliday, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (1970), the district court ruled, inter alia, that the Due Process Clause of the Fourteenth Amendment requires a State agency to provide a recipient of public welfare benefits with notice and a hearing prior to "reduction" of benefits. Goliday v. Robinson, 305 F.Supp. 1224 (N.D.Ill. 1969). The Supreme Court vacated the judgment and remanded the case for a determination after the development of a record by the parties. Thus, in the case before us, the duty of the Administration is not plainly prescribed by the Constitution. If this Court has jurisdiction to hear it and the matter is not moot, the case turns on whether there is a constitutional duty upon the Administration to make available to plaintiff the opportunity for a preadjustment oral hearing. The question is not free from doubt. See what was said in Goldberg v. Kelly, 397 U.S. 254, 262-263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Also see, Mitchell v. W. T. Grant Company, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Plaintiff has not supported her allegations of jurisdiction under § 1361.
Jurisdiction may not be invoked validly under the Administrative Procedure Act, 5 U.S.C. §§ 701-704, for two reasons. First, the section is not jurisdictional. Zimmerman v. United States Government, 422 F.2d 326, 330-331 (3rd Cir. 1970), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565. Second, regarding *35 the constitutional violation claim, it has been decided that this action is not one brought to review agency action but a decision of Congress. See, Johnson v. Robison, supra, where the constitutional challenge was to a decision of Congress to create under the Veterans' Readjustment Act of 1966, 38 U.S.C. §§ 1651-1697, a statutory classification entitled to benefits that does not include a conscientious objector who satisfactorily completes two years of alternative civilian service instead of "full-time duty in the Armed Forces."

II. Jurisdiction over plaintiff's claim of defendant's violation of the Social Security Act

Plaintiff asserts that the defendant makes recovery of overpayments from her and other individuals in violation of § 204(b) of the Act and asks that these amounts be returned. A claim of this type arises under Title II of the Act. Individuals having such claims may seek to prevent the recovery or seek repayment of those amounts by contesting the decision of the Administration and then obtain review of the final decision in a Federal district court under § 205(g) of the Act. However, the third sentence of § 205(h) provides: "No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 24 of the Judicial Code [section 41 of Title 28] to recover on any claim arising under this subchapter [Title II]." One of the original purposes of the bringing of this action against the Secretary of HEW was to recover amounts already deducted from plaintiff's monthly benefits and to forestall future adjustments of the benefits for purposes of recovering the $592 overpayment.
Subsection (h) of § 205 first appeared as part of the Social Security Act of August 10, 1939, 53 Stat. 1362, 1371. The words "section 24 of the Judicial Code" appearing in that subsection referred to § 24 of the Judicial Code of March 3, 1911, 36 Stat. 1087-1168, which contained over 296 sections. Section 24 of that Code, with its 27 paragraphs, was intended to include all the jurisdictional provisions relating to the Federal district courts. That Code was repealed by Act of June 25, 1948, C. 646, § 39, 62 Stat. 992, effective September 1, 1948. The jurisdictional provisions of the district courts were thereupon set forth under sections 1331 to 1359[4] of the Judicial Code of 1948, now in force. With a few exceptions not material here, the paragraphs of old § 24 with additions, deletions, or changes in phraseology, formed the basis for the new sections of the 1948 Code.[5]
Section 205 of the Act has been amended several times since 1939, but the reference to old "section 24 of the Judicial Code" (section 41 of Title 28) has not been expressly deleted from subsection (h). Repeal, as well as amendment by implication, is not favored. See, United States v. Welden, 377 U.S. 95, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964). Though the wording "section 24 of the Judicial Code" (section 41 of Title 28) appearing in subsection (h) was not expressly revised after 1948 so that it would comport with the new section designations, those words are to be so read. Such a reading of subsection (h) has been made without comment by the courts.[6] That is, §§ 1331 to 1359, inclusive, of Title 28 are to be considered as coming within the prohibition of subsection (h). Therefore, jurisdiction *36 to recover on a claim under Title II of the Act may not be invoked under §§ 1331(a), 1337, 1343(4) and 1346(a)(2) if the prohibition of subsection (h) is to be honored, as it must be.
Section 1361 of Title 28, 76 Stat. 744, the mandamus section, was enacted on October 5, 1962, fourteen years after the old section 41 was repealed. Though it was never a part of old section 41, it may be argued that the prohibition of § 205(h) applies equally to § 1361. We need not resort to that argument here. Section 204(a) requires the Administration to recover overpayments and may waive such recovery only if the two conditions of subdivision (b) of § 204 are met. The duty of making the initial determination of whether these conditions are established is upon the agency. What plaintiff is really complaining about here is not that the agency has refused to make the initial determination as to waiver but that it did make the determination and decided it against her. Under these circumstances, it is hard to see how mandamus can apply. Regarding 28 U.S.C. § 1361, our Court of Appeals, in the case of Richardson v. United States, 465 F.2d 844, 849 (3rd Cir. 1972), summarized as follows:
"The legislative history of the mandamus statute reveals that the statute's construction turns upon traditional mandamus law. Davis, Administrative Law Treatise (1970 Supplement) § 23.10. In order for mandamus to issue, a plaintiff must allege that an officer of the Government owes him a legal duty which is a specific, plain ministerial act `devoid of the exercise of judgment or discretion.' Clackamas County, Or. v. McKay, 94 U.S.App.D.C. 108, 219 F.2d 479, 489 (1954). ICC v. New York, New Haven & Hartford R. R., 287 U.S. 178, 204, 53 S.Ct. 106, 77 L.Ed. 248 (1932), Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809 (1930), United States v. Walker, 409 F.2d 477, 481 (9th Cir. 1969). An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt. United States v. Walker, supra. Additionally, plaintiff must have exhausted all other available means of relief. Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969) cert. denied, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970)."
Here the determination whether or not an individual is at fault under § 204(a)(1) of the Act requires the exercise of judgment by the agency. Moreover, plaintiff has not awaited a final decision of the agency on her claim which could be tested in a proceeding brought pursuant to § 205(g). The failure to exhaust administrative remedies is jurisdictional. Coy v. Folsom, 228 F. 2d 276 (3rd Cir. 1955); Ensey v. Richardson, 469 F.2d 664 (9th Cir. 1972). Under these circumstances, § 1361 is not available as a basis for jurisdiction in this action to recover adjusted amounts.
Nor may jurisdiction be validly invoked under the Administrative Procedure Act, 5 U.S.C. §§ 701-704; as noted earlier, in this Circuit the pertinent sections of that Act are not jurisdictional. Zimmerman v. United States, supra.

III. Declaratory and injunctive relief.

Even if we were to have jurisdiction over the subject matter of this action, in our opinion, the case is not one appropriate for declaratory relief. The Administration has returned the amounts previously deducted from her monthly checks for February and March of 1973 and is not currently making any adjustments in her benefits. She sued to get a personal evidentiary hearing prior to any adjustments in her benefits. That hearing has been offered her by the Administration prior to the implementation of any decision to make future adjustments. Outside of declaratory and injunctive relief, the purpose of her civil action has been accomplished. The dismissal of her action seems proper. Lindsay v. Richardson, 357 F.Supp. 203 (W.D.N.C.1973). Also see, Indiana *37 Employment Division v. Burney, 409 U. S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973); Rivas v. Cozens, 409 U.S. 55 (1972); DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); Gross v. Fox, 496 F.2d 1153 (3rd Cir. 1974). Under the circumstances, the defendant's motion for summary judgment dismissing her action should be allowed.
Plaintiff's motion for the convening of a Three-Judge Court will be denied.
The motions for intervention will be denied.[7] Plaintiff's motion for a class action determination will be denied, because there is not a class representative before the Court with a claim over which the Court has jurisdiction.
NOTES
[1] See, Richardson v. Perales, 402 U.S. 389, 399-402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).
[2] Unaware of the action taken by the Administration, this Court issued an order on March 30, 1973, temporarily restraining the defendant from withholding any amount from plaintiff's monthly checks on account of the overpayment.
[3] For a case involving a nondiscretionary command, see for example, Christian v. New York State Dept. of Labor, Div. of Emp., 414 U.S. 614, 94 S.Ct. 747, 749 n. 3, 39 L. Ed.2d 38 (1974).
[4] Section 1360 of the 1948 Code, granting to the States or Territories of Hawaii and Alaska jurisdiction over civil causes of action between Indians or to which they are parties, was added by 67 Stat. 589 (1953). Section 1362, conferring jurisdiction in the district courts of civil actions brought by certain Indian tribes with a governing body, was added by 80 Stat. 880 (1966).
[5] The "function of the Revisers of the 1948 Code was generally limited to that of consolidation and codification." Tidewater Oil Co. v. United States, 409 U.S. 151, 162, 93 S.Ct. 408, 415, 34 L.Ed.2d 375 (1972).
[6] See, for example, footnote 7 appearing on page 666 in Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663 (2nd Cir. 1973).
[7] In all probability, these individuals are protected by the class action determination made in Mattern v. Weinberger, 377 F.Supp. 906 (E.D.Pa., decided April 30, 1974).